**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ARCH INSURANCE COMPANY, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-CV-02718 SEP |
| ) | |
| PARSONS TRANSPORTATION GROUP, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Parsons Transportation Group, Inc.'s ("Parsons" or "Defendant") Motion to Dismiss, or in the alternative, to stay the litigation. Doc. [15]. Plaintiff Arch Insurance Company ("Arch" or "Plaintiff") responded in opposition to the motion, Doc. [23], Defendant replied, Doc. [24], and the matter is fully briefed and ripe for disposition. For the reasons set forth below, Defendant's alternative motion to stay will be granted.

**I.      Factual and Procedural Background**

This declaratory judgment action arises out of a Missouri Highways & Transportation Commission ("MHTC") construction project known as the Page Avenue Extension ("Project"). In early 2013, the MHTC entered into a contract with Page Constructors, LLC ("Page"), in which Page agreed to perform or provide construction services for the Project (the "Design-Build Contract"). Page, in turn, entered into an agreement with Parsons, pursuant to which Parsons agreed to provide design services for the Project (the "Page-Parsons Agreement"). Page subsequently acquired a commercial general liability insurance policy from Plaintiff ("Arch

Policy") for the policy period of April 4, 2013, through July 31, 2015.  The MHTC is an additional insured under the Arch Policy.

In June 2017, Dee Bax filed a lawsuit in the Circuit Court of St. Charles County, Missouri, for damage to her property allegedly resulting from Project-related construction.  That lawsuit was quickly followed by three similar suits, one filed in July 2017 by Dennis Sterns, and two more filed in May 2018, one by Larry Williams and the other by Richard and Lisa Giancola (the plaintiffs in these actions will be collectively referred to as the "State Plaintiffs" and the state court lawsuits as the "State Actions").  Each of the State Plaintiffs owns or co-owns one of two neighboring lakes situated on or near their respective properties.  They allege that the Project construction resulted in increased water run off that caused discoloration and degradation of the lakes, and they assert claims for inverse condemnation against MHTC.  MHTC, as an additional insured under the Arch Policy, tendered defense of the State Actions to Page.  Since such tender, Arch has defended the MHTC in the State Actions.

After the State Actions had been pending for over two years, Arch, in a letter dated August 21, 2019, (Tender Letter") tendered to Parsons the defense and indemnity of the MHTC in the State Actions.  The Tender Letter asserts that the State Actions allege property damage caused by the negligent acts or omissions of Parsons, and that, pursuant to the indemnification clause of the Page-Parsons Agreement, Parsons, in its role as Designer, is obligated to defend and indemnify the MHTC in the State Actions.  Article 10 of the Page-Parsons Agreement includes an indemnification clause stating, in pertinent part:

> 10.2   Designer's General Indemnification
>
> 10.2.1   Designer, to the fullest extent permitted by law, shall indemnify, hold harmless and defend Owner, Design-Builder and their officers, directors, employees and agents from and against claims, losses, damages, liabilities, including attorneys' fees and expenses, for . . . property

2

>damage or destruction . . . to the extent caused by the negligent acts or omissions of Designer.

On September 10, 2019, Parsons denied Arch's demand. Parsons asserted that it was not obligated to defend or indemnify the MHTC, because the plaintiffs in the State Actions do not allege negligent design by Parsons, nor do they otherwise allege negligent acts or omissions by Parsons. Rather, the State Actions refer only to damage resulting from the construction of the Project. Because the indemnification clause of the Page-Parsons Agreement is triggered solely by the "negligent acts or omissions of Designer," Parsons argues that the clause has not been triggered, and it owes no duty to defend or indemnify the MHTC.

After Parsons denied Arch's tender, Arch commenced this declaratory judgment action under 28 U.S.C. § 2201, seeking a declaration regarding Parsons's duty, pursuant to the Page-Parsons Agreement, to defend, indemnify, and hold harmless the MHTC in the State Actions, and to reimburse Arch for the defense costs it has already incurred.

Parsons now moves this Court to dismiss the instant action, or in the alternative, to stay and abstain from hearing the case, in light of the pending State Actions. In support of its motion, Defendant relies on the *Brillhart-Wilton* abstention doctrine articulated in *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Pursuant to this doctrine, a federal district court may abstain from hearing an action when there is a sufficiently related and concurrently pending state court action.

## II.   Discussion

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). "Generally, a federal district court must exercise its

3

jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16-19 (1983)); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (stating that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them").

This general rule, however, yields to practical considerations and substantial discretion when the federal complaint seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a). *See Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995). District courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants [under the Declaratory Judgment Act.]" *Id.* at 286. "This broader discretion arises out of the Declaratory Judgment Act's language that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 792 (2008) (emphasis in original) (quoting 28 U.S.C. § 2201(a)). The Supreme Court in *Wilton* emphasized that the Declaratory Judgment Act is properly characterized as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." 515 U.S. at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241 (1952)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*. at 288.

The scope of a district court's discretion to abstain from exercising jurisdiction under the Declaratory Judgment Act depends upon whether a "parallel" state court action was pending when the plaintiff brought the declaratory judgment action. *Scottsdale*, 426 F.3d at 999. When a parallel state court action is pending, a district court enjoys broad discretion to abstain, guided by

4

considerations of judicial economy. *Id*. at 997. Where a declaratory action has some relation to an underlying state action but is not "parallel" to it, "the considerations of practicality and wise judicial administration that allow a district court greater discretion under *Wilton* are diminished." *Id*. at 996 (citing *Wilton*, 515 U.S. at 290). The threshold issue for identifying the extent of a district court's discretion to abstain, then, is the determination of whether the federal and state suits are parallel.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id*. at 997 (internal quotation omitted). Neither Arch nor Parsons is a named party in the underlying State Actions, which are between the State Plaintiffs and the MHTC. Moreover, the State Actions deal with the MHTC's liability relating to the construction of the Page Avenue Extension, whereas the declaratory judgment action at issue here involves matters of contract interpretation and enforcement. The Court concludes, then, that the suits are not parallel, "for the state court proceedings involve parties, arguments, and issues different from those in the federal court proceedings." *Scottsdale*, 426 F.3d at 997. That the proceedings have overlapping factual and legal issues is insufficient to find that the suits are parallel. *Id*.

When no parallel state action is pending, district courts still retain considerable discretion to abstain, but that discretion is less broad. In *Scottsdale*, the Eighth Circuit adopted a six-factor test to guide district courts in determining whether to exercise jurisdiction over a declaratory judgment action that is related, but not parallel, to an action pending in state court. *Id*. at 998-99. The *Scottsdale* factors are as follows:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts; (4) whether the issues

5

> raised in the federal action can more efficiently be resolved in the court in which the state action in pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Id*. at 998 (quoting and adopting a test articulated by the Fourth Circuit in *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co*., 139 F.3d 419, 422 (4th Cir. 1998)) (internal brackets and quotation marks omitted). "Facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution are particularly within [the district court's] grasp." *Aetna Cas*., 139 F.3d at 422 (quoting *Wilton*, 515 U.S. at 289). Declining to exercise jurisdiction over a declaratory judgment action is within a district court's discretion so long as the factors weigh in favor of denying or postponing relief. *Scottsdale*, 426 F.3d at 997.

Turning to application of the six *Scottsdale* factors, the first two factors—"whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue," and "whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding"—support the exercise of jurisdiction. A declaration from this Court as to the scope of Parsons's duty, if any, to defend and indemnify the MHTC in the State Actions pursuant to the Page-Parsons Agreement would clarify legal relationships and provide the parties relief from uncertainty.

The third factor—"the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts"—is neutral. This case involves interpretation of a contract, which is a matter of state, not Federal, law. *See Gohagan v. Cincinnati Ins. Co*., 809 F.3d 1012, 1015 (8th Cir. 2016). However, Missouri state courts do not have a special interest in resolving routine contractual disputes, and issues of Missouri

6

contract law are commonly before this Court. The sixth factor—whether the declaratory judgment action is being used for procedural fencing—is likewise neutral, as nothing on the record indicates that Arch filed the instant action in order to gain a procedural advantage.

However, the fourth and fifth factors of the *Scottsdale* test—"whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action in pending," and "whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law"—weigh heavily in favor of abstention. The State Actions will require that court to delve into questions regarding precisely what caused the damage alleged by the State Plaintiffs in their inverse condemnation claims, and who, if anyone, bears responsibility for the same. Likewise, because Parsons's duty to defend and indemnify is triggered solely by negligent acts or omissions attributable to Parsons, this declaratory judgment action would require the Court to conduct fact-intensive inquiries into issues of causation and responsibility. Due to the presence of overlapping issues of fact and law, permitting the federal action to proceed concurrently with the State Actions would result in an unnecessary entanglement between the two systems. Allowing this action to continue runs the risk of inconsistent findings and would constitute a waste of judicial resources. There is no compelling justification for requiring the courts or the parties to expend time and resources exploring similar issues of negligence and causation in two different fora. Therefore, the Court will abstain from the exercise of jurisdiction at this time.

The Court further concludes that this case should be stayed rather than dismissed. "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without

risk of a time bar if the state case . . . fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2; *Royal Indem. Co.,* 511 F.3d at 797–98 (stating that an order staying an action is "only postponement of a decision for its best fruition") (quoting *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)). To the extent Arch believes these issues remains unresolved at the conclusion of the State Actions, it may seek to pursue the instant declaratory judgment action in this Court

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, or in the alternative, to Stay the Litigation, Doc. [15], is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's alternative Motion to Stay the Litigation is **GRANTED**.

**IT IS FINALLY ORDERED** that all proceedings in this action are **STAYED** pending the resolution of Cause Nos. 1711-CC00629, 1711-CC00706, and 1811-CC00540 in the Circuit Court of St. Charles County, Missouri.  The parties shall promptly notify the Court when the state court proceedings are concluded.

Dated this 22nd day of September, 2020.

　　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　SARAH E. PITLYK
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE